UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>22-20191-CR-WILLIAMS</u>

UNITED STATES OF AMERICA

 **Plaintiff,**

vs.

**ANDREW ALTURO FAHIE,**

 **Defendant.**
_____/

## DEFENDANT ANDREW ALTURO FAHIE'S MOTION IN LIMINE REGARDING GOVERNMENT "CHAT" EXHIBITS

Defendant, Andrew Alturo Fahie ("**Mr. Fahie**" or "**Defendant**"), by and through undersigned counsel, files this Motion in Limine to preclude certain WhatsApp chat excerpts ("**Chats**") and, alternatively, moves for the admission of the Admission of an Exculpatory Statement at trial made by Mr. Fahie and relayed to Oleanvine Maynard in the event certain Government "Chat" exhibits are admitted by the Court. In further support thereof, Mr. Fahie states:

### BACKGROUND

1. Mr. Fahie was arrested on April 28, 2022, and was initially charged via a complaint filed in the Southern District of Florida (DE 1). Mr. Fahie had his Initial Appearance the following day, April 29, 2022, before the Honorable Magistrate Judge Jonathan Goodman (DE 6). *Brady* and *Giglio* admonitions were given to the Government at the time of the initial appearance.

2. Mr. Fahie was indicted on May 11, 2022 (DE 21). The indictment was superseded on November 9, 2022, adding a travel count against Mr. Fahie (DE 61). Every count in the superseding indictment includes an element of intent. *See id*.

3. Included in the production from the Government of Mr. Fahie's Samsung phone, which production in part caused the delay of the instant trial from January 4 to January 22, 2024, are literally thousands of "Chat" messages. Owing to software issues with the encryption method used by the Government blocking the ability of defense counsel to access the full data on the phone (the vast majority of which was temporally irrelevant), the assigned AUSAs graciously provided a filtered data set of the Chats that was limited to the relevant time frame of the events charged in the indictment.

4. The Government previously provided its exhibit list for trial on December 11, 2023. (DE 151). The Government filed a second exhibit list on January 17, 2024, adding a substantial number of "Chats" as exhibits. (DE 204).

5. Consultation between counsel on January 18, 2024, led to a third exhibit list being provided to the defense (although not yet filed) which withdraws some of the chats in DE 204 and reduces others (some of which had Chats dating back to 2018) (the "**Third Exhibit List**"). We address each of the Chats as marked on the Third Exhibit List below.

6. Defendant objects to the introduction of his Samsung Note 10+ phone and the full extraction of that phone. Those items are marked as **Exhibits 15(a) and (b)**. We do not have an objection to identification of the Samsung Note 10+ ("**Mr. Fahie's Phone**") for purposes of laying a foundation for introduction of extractions of material from the phone, and indeed we have offered to stipulate to the proper extraction of the phones as a whole in this case by CBP Agents Cortes and Adams and the foundation of any Chats from those phones (to include the Maynards' phones). However, introduction into evidence, and consequently into the public record, of Mr. Fahie's phone itself and a full extraction of everything on it is unnecessary, burdens the record with an enormous amount of data that is wholly irrelevant to this case, and is replete with personal

information, to include matters relating to the health treatment of Mr. Fahie's family members. As well, owing to the fact that at the time of his arrest Mr. Fahie was the sitting head of government of a foreign country, there are also potentially communications made in the official course of his duties which are wholly unrelated to this case factually and temporally. Balancing these competing factors against the unnecessary admission of Mr. Fahie's phone and the full extraction, Exhibits 15(a) and (b) respectively, Mr. Fahie moves *in limine* to exclude these exhibits from admission into evidence. As stated above, to the extent necessary to lay a foundation for the admission of Chats extracted from Mr. Fahie's phone, we have no objection to identifying Exhibits 15(a) and (b) and we anticipate stipulating to the foundation and authenticity of individually marked extractions discussed below, while reserving all other objections.

7. Government **Exhibit 15(c)1** is a full call log from Mr. Fahie's phone. The Government has advised that it intends to filter the log (which itself is hundreds of pages in length and includes vast majorities of data that is temporally irrelevant). Mr. Fahie again will stipulate to the foundation and authenticity of the extracted call log, but Mr. Fahie reserves all other objections until such time as the Government provides it's filtered subset exhibit. However, as with the previous exhibits, introduction of the full log is not relevant and contains telephone numbers of individuals or entities wholly unrelated to this matter and should therefore be excluded from evidence.

8. Government **Exhibit 15(c)2** is a full contact list from Mr. Fahie's phone which itself is hundreds of pages in length and includes vast majorities of data that is temporally irrelevant as well as containing the private telephone numbers and contact data of individuals and entities wholly unrelated to this matter. Mr. Fahie again will stipulate to the foundation and authenticity of the extracted contact list and likely to any numbers the Government wishes to identify

specifically. Such information has not yet provided by the Government. Mr. Fahie reserves all other objections. However, as with the previous exhibits, introduction of the full contact list is not relevant and contains telephone numbers of individuals or entities wholly unrelated to this matter and should therefore be excluded from evidence.

9. Government **Exhibit 15(c)7** is an extract of Chats from Mr. Fahie to his official assistant. **Exhibit 15(c)7** consists of a two-page Chat between Mr. Fahie and his official assistant. The Government advised that this exhibit is being offered to show that Mr. Fahie directed that his previously reserved commercial flight planes from Miami to Philadelphia should be "cancelled." The Chat actually shows that he directed that it be postponed until further notice and had general limited communications with his assistant. In any event, the matters relating to travel are discussed clearly on the recordings. Presentation of the Chat therefore has little probative value considering the recordings and is merely cumulative of other evidence. Moreover, while the Government might argue that Mr. Fahie's statements are non-hearsay by definition pursuant to FRE 801(d)(2)(A), it offers no exception to the statements made by Mr. Fahie's assistant. **Exhibit 15(c)7** should be excluded as cumulative and, to the extent it contains statements from a nonparty, those statements should be excluded as hearsay.[1] Moreover, Mr. Fahie does not contest that, as stated in the recordings, he intended to cancel his commercial travel plans.

10. Government **Exhibit 15(c)9** is listed on the Government's Third Exhibit List as chats with R. Caraway. A similar listed can be found on DE 204 at Government Exhibit 15(c)12. The Chats are 513 pages in length and have not been offered in redacted form by the Government. Mr. Garaway is a contractor who was building the Fahie's home. The fact that a home was being

---

[1] As a practical matter, of course, if the Government was intending to corroborate the fact that Mr. Fahie indeed did not plan to take a commercial flight from Miami, all the Government had to do was subpoena the carrier for the travel record.

built is not contested and is discussed in the recorded conversations. In communications with the Government in an attempt to resolve this matter, the Government advised that it seeks introduction of these Chats to establish that the Fahies were building a house. The evidence should be excluded because it is not relevant, it is cumulative, and it is a waste of the Court's and ultimately the jury's time to wade through 513 pages of Chats to "prove" a fact that is not, and never has been, in dispute.

11. Government **Exhibit 15(c)10** is listed on the Government's Third Exhibit List as chats with "Dorrie D1." The same chat reference is listed on DE 204 as Government Exhibit 15(c)14. The Dorrie chat exhibit is a 51-page series of communications dealing with the Fahie's application and processing for a loan for the building of their house. As in the case with the builder of the home, these chats are personal in nature and have no relevance to this case. The Government advised that it is being offered (50 plus pages of chat) to show that the Fahies were building a house. Again, we stipulate that, as discussed on the tapes, they were building a home and that they took out a personal loan to pay for the residence. This exhibit is cumulative and prejudicial because it discloses personal financial matters and is simply unnecessary given the stipulation.

12. Government **Exhibit 15(c)11** are redacted Chats with Royal Virgin Islands Police Force ("**RVIPF**") Commissioner Collins. First, it should be noted that the Chats are marked as being between Mr. Fahie and Commissioner of Police Matthews. We acknowledge that Commissioner Collins took up the post of Commissioner on or about April 19, 2021. Additionally, we note that the Chat on 4/15/2022 in which the writer extends his condolences to Mr. Fahie on the recent death of his sister, is signed by Commissioner Collins. The Government's redacted nine (9) page offering is much improved from the original 381-page exhibit with certain redactions. The Government advised that it was introducing the Chat to show that Mr. Fahie did not notify the

RVIPF Commissioner about the fact that Ms. Maynard had introduced him to the CS and the subsequent conversations. The Government advised that it was not offering the Chats for the truth of the matter asserted. In other words, it is using the same argument the defense used in support of introduction of the statements made by RS to Ms. Maynard after the arrest. We do not object to this exhibit, under the assumption that the Government has cleared and resolved any confidentiality or privacy concerns, if any, that the Government of the Virgin Islands might have regarding this exhibit.

13.     Government **Exhibit 15(c)12** is a redacted Chat "with" the Virgin Islands NSC (National Security Council). All but two lines are redacted. The two lines that remain consist of Mr. Fahie asking for a link and saying please. The Government offers this exhibit to establish that Mr. Fahie did not tell the Virgin Islands NSC that Ms. Maynard had introduced him to the CS and the subsequent conversations. As with the chat with Commissioner Collins, the Government does not offer the Chat for the truth of the matter asserted. We do not object to this exhibit, under the assumption that the Government has cleared and resolved any confidentiality or privacy concerns, if any, that the Government of the Virgin Islands might have regarding this exhibit.

14.     Government **Exhibits 16(a) and (b)** are listed on the Government's Third Exhibit List as the Defendant's Microsoft Surface and the full extraction from the laptop respectively. For the same reasons as set forth above in paragraph 6 above, these exhibits should not be introduced into evidence. We have no objection if they are marked for identification, although as with Mr. Fahie's phone we will stipulate to the foundation and authenticity of extracts taken from the full extraction while reserving all other objections. We note, however, that the Government has not identified any proposed extractions from Mr. Fahie's laptop. As such it would seem that these exhibits are not relevant, and they should be excluded.

15.     Given the Government's attempts to introduce Chats with Commissioner Collins and the NSC to establish that Mr. Fahie did not tell either about the CS, the defense moves for admission, not for the truth of the matter asserted, of RS's statements to Ms. Maynard.

16.     On November 11, 2023,[2] counsel for the United States, as well as DEA Special Agents Brian Witek and Shad Aschleman, interviewed alleged co-conspirator Oleanvine Maynard and provided the defense with a DEA 6 report from that interview. The DEA 6 report states that Ms. Maynard advised the Government that an individual named RS[3] "relayed Fahie's message to Maynard while being processed at the DEA Miami Field Division Office. Maynard stated [RS] told her that Fahie was suspicious of the confidential source and that once the airplane landed Fahie was going to call the local authorities in Tortola and have the confidential source arrested and have the money seized. Maynard stated RS told her that upon landing they needed to leave their luggage in the airplane and walk out." DEA Form 6 Proffer of Interview of Oleanvine Maynard on Nov. 16, 2023 at ¶ 5.

17.     SA Witek's report also suggests that Mr. Fahie told RS this after the arrest but before appearing in Court. RS never appeared in Court. Other objective factors suggest that this item in the report is incorrect and may simply be unclear writing. For example, Ms. Maynard's statement that RS told her that upon landing they (Maynard and RS) need to leave their baggage in the airplane and walk out is related in the present tense and therefore would not make chronological sense in the context of an alleged post-arrest conversation.[4]

---

[2] There is some confusion based on the DEA 6 when this interview of Ms. Maynard took place. SA Witek's report reflects both a November 11 and a November 16, 2023, date of interview.
[3] RS is referenced on the tape as the individual who was to accompany alleged payments to Ms. Maynard and the Defendant from Miami to Tortola, VI on April 28, 2022. RS was taken into custody at the same time as Ms. Maynard but was ultimately released, uncharged, and returned to Tortola.
[4] According to SA Witek's report of the conversation, all these conversations took place while Mr.Fahie, Ms. Maynard and RS were in DEA holding immediately after their arrest, which would be a gross breach of ordinary post arrest protocols. The defense intends to inquire into this improbable scenario (assuming Ms. Maynard adopts SA Witek's report of her statements).

7

18. Mr. Fahie will attack the Government's proof of his intent, which requires a subjective test. *See U.S. v. Grajales*, 450 Fed. Appx. 893, 901 (11th Cir. 2012) (Unpublished) ("The defense of "innocent intent" is a subjective test, requiring an honestly held belief.").

19. The RS statements are not offered for the truth of the matter asserted in the out of court statement—indeed no money was seized (nor was there ever a chance of that taking place as there was no money and the plane never left Florida); the CS was not arrested, and Ms. Maynard and RS did not leave their luggage and walk away from the plane. Rather they are offered for the fact that they were made.

20. The Government does not contest **that** the statements were made, but rather **when** they were made. While timing may go to the weight of the statements, timing does not, and should not, impact the admissibility of statements which go directly to a specific defense, and which are categorically not offered for the truth of the matters "asserted in the statement." *See* Fed. R. Evid. 801(c)(1). Nor can the Government credibly argue that the RS statements are not relevant given their desire to show chats with the RVIPF Commissioner and NSC to establish that Mr. Fahie did not tell either of the CS and Ms. Maynard.

21. The defense is, of course, amendable to a limiting instruction from the Court to accompany the admission of such evidence so that the jury knows the evidence is not offered for the truth of the matter asserted.

22. For the foregoing reasons, Mr. Fahie respectfully requests that the following Government Exhibits be excluded from evidence in this case for the above stated reasons:

a. Mr. Fahie's Samsung Note 10+ phone, the full extraction of the same, full call log, full contact list (the defense does not objection to marking the exhibits for identification and stipulates to the foundation and authentication of any targeted extractions drawn therefrom)

(paragraphs 6-8 *infra*);

b.  Mr. Fahie's Chats with his official assistants (paragraph 10 *infra*); and

c.  Mr. Fahie's Chats with his builder and banker (paragraphs 10 and 11).

d.  Mr. Fahie also respectfully requests that the Court admit the evidence regarding RS's statement to Ms. Maynard in light of the Government's exhibits of Chats with the RVIFP Commissioner and the NSC.

Dated: January 23, 2024

                                        Respectfully submitted,

                                        **VENABLE, LLP**
Theresa M.B. Van Vliet, Esq.
Fla. Bar No. 374040
Joyce A. Delgado, Esq.
Fla. Bar No. 1002228
*Counsel for Defendant Andrew A. Fahie*
200 East Broward Blvd., Suite 1110
Fort Lauderdale, FL  33301
Telephone: 954-453-8000
Telefax: 954-453-8010

By: /s/ *Theresa M.B. Van Vliet*
       Theresa M.B. Van Vliet, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served upon all parties registered to receive electronic notice via CM/ECF Notification on January 23, 2024.

By: /s/ Theresa M.B. Van Vliet