UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20191-WILLIAMS(s)

UNITED STATES OF AMERICA

v.

ANDREW ALTURO FAHIE,

      **Defendant.**

_____/

**GOVERNMENT'S BRIEF REGARDING APPLICATION OF FEDERAL RULE OF EVIDENCE 606(B) FOLLOWING JURY's UNANIMOUS VERDICT**

The United States submits the following brief regarding the application of Federal Rule Evidence 606(b) regarding the unanimous verdict returned convicting Andrew Alturo Fahie (the "Defendant") of all counts on February 8, 2024.

**RELEVANT BACKGROUND**

On November 9, 2022, the Defendant was charged by Superseding Indictment with the following: conspiracy to import cocaine into the United States (Count 1); conspiracy to commit promotional and concealment money laundering (Count 2); attempt to commit promotional money laundering (Count 3); and foreign travel in aid of racketeering (Count 4) (DE 61). The Defendant proceeded to jury trial beginning on January 29, 2024. The Government's case-in-chief included approximately five (5) witnesses and multiple hours of audio/video recorded conversations of the Defendant and his co-defendants, including approximately 1,100 pages of recording transcripts and detailed forensic results from the Defendant's and his co-defendants' seized phones.

1

On February 8, 2024, the jury returned a unanimous verdict convicting the Defendant on all counts. Prior to publishing the verdict form, the Court confirmed that it was completed and filled out. After publishing the jury's verdict, the Court individually polled each and every member of the jury. Each juror individually answered "yes" in response to the Court's question if the pronounced verdict was – in fact - their verdict. Thereafter, the jury was discharged.

After the jury left the courtroom, counsel for the Defendant stated on the record that one juror appeared to hesitate before answering, "yes" to the Court's poll. The Court acknowledged the juror's pause, but reiterated that the juror, like all of the others, individually answered "yes" in response to the Court's question if the pronounced verdict was – in fact – the juror's verdict.

At some point well after the jury had been discharged, apparently two (2) jurors expressed dissatisfaction or concern with the verdict to a member of the Court's staff. The Court brought the two (2) jurors into the courtroom. The Court dismissed them and notified both that there might be a subsequent investigation as to their post-verdict, post-polling, and post-discharge statements to the Court's staff member. The Court, adhering to Fed. R. Evid. 606(b), did not conduct any inquiry or investigation of these two (2) jurors or any other juror. Aside from notifying the parties as to the post-verdict, post-polling, and post-discharge juror incident with the Court's staff member, the Court also did not make any factual findings.

The Court concluded the proceedings by asking the Government and the Defendant to provide guidance as to how the Court should proceed. The Court has scheduled a hearing for 10:30 a.m. on February 12, 2024 (DE 224).

## **FEDERAL RULE OF EVIDENCE 606(b)**

"By the beginning of [the 1900s], if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach

2

a jury verdict." Tanner v. United States, 483 U.S. 107, 117, (1987); see 8 J. Wigmore, Evidence § 2352, pp. 696–697 (J. McNaughton rev. ed. 1961) (common-law rule, originating from 1785 opinion of Lord Mansfield, "came to receive in the United States an adherence almost unquestioned").

"The Supreme Court has repeatedly emphasized the important policy considerations that require the shielding of juries from public scrutiny of their deliberations." United States v. Siegelman, 640 F.3d 1159, 1185 (11th Cir. 2011) (citing Williams v. Florida, 399 U.S. 78, 100, (1970)). "'The essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." Id.

Trial courts are "subject to very stringent limitations on their authority to question jurors about their deliberations, and to use one or more juror's testimony to impeach the verdict of all." Siegelman, 640 F.3d at 1185. "Once a jury has pronounced its judgment, Rule 606(b) helps ensure jurors' ability to separate and melt anonymously into the community from which they came." United States v. Leung, 796 F.3d 1032, 1038 (9th Cir. 2015) (internal quotations and citations omitted).

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. Moreover, full and frank discussions in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct.
>
> Tanner, 483 U.S. at 120-21 (internal citations omitted).

"Permission to attack jury verdicts by postverdict interrogations of jurors would allow defendants to launch inquiries into jury conduct in the hope of discovering something that might invalidate the verdicts against them." Siegelman, 640 F.3d at 1185-86 (quoting Tanner, 483 U.S. at 119-20 and noting that "'[j]urors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict' and that "such events would result in 'the destruction of all frankness and freedom of discussion' in the jury room").

Even within the context of new-trial motions based on alleged juror misconduct, "the law both anticipates and tolerates some level of imperfection in the [jury] system." Siegelman, 640 F.3d at 1185 (citing United States v. D'Angelo, 598 F.2d 1002, 1004-05 & n.4 (5th Cir. 1979)). As a result, defendants are not authorized to challenge their conviction(s) by arguing that a jury's verdict resulted from compromise, mistake, or carelessness. See United States v. Snipes, 440 Fed. Appx. 709, 711 (11th Cir. 2011) (unpub. op.) (citing Siegelman, 640 F.3d at 1185, n.36).

"In an effort to protect the jury system, the Federal Rules of Evidence enshrine the common law rule against the admission of a juror's testimony to impeach the jury's verdict." Siegelman, 640 F.3d at 1186. "By disallowing a juror to impeach the jury's verdict by testimony about their deliberations, [Federal Rule of Evidence 606] operates to protect jurors from postverdict investigation and to protect the verdict from endless attack." Rule 606(b) codifies the common-law categorial bar:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
>
> Fed. R. Evid. 606(b)(1).

Rule 606(b)(2) provides three (3) exceptions. A juror may only testify about whether: (A) extraneous prejudicial information was improperly brought to the jury's attention; (B) an outside influence was improperly brought to bear on any juror; or (C) a mistake was made in entering the verdict on the verdict form. Fed. R. Evid. 606(b)(2)(A)-(C). A fourth exception to Rule 606(b)(1) exists when "a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant." Pena-Rodriguez v. Colorado, 580 U.S. 206, 225 (2017).

As to Rule 606(b)(2)(C), "[i]n adopting the exception for proof of mistakes in entering the verdict on the verdict form, the amendment specifically rejects the broader exception, adopted by some courts, permitting the use of juror testimony to prove that the jurors were operating under a misunderstanding about the consequences of the result that they agreed upon." Fed. R. Evid. 606(b), advisory committee notes to 2006 amendments (citations omitted). "The broader exception is rejected because an inquiry into whether the jury misunderstood or misapplied an instruction goes to the jurors' mental processes underlying the verdict, rather than the verdict's accuracy in capturing what the jurors had agreed upon." Id.

"[T]he [Rule 606(b)(2)(C)] exception established by the amendment is limited to cases such as 'where the jury foreperson wrote down, in response to an interrogatory, a number different from that agreed upon by the jury, or mistakenly stated that the defendant was 'guilty' when the jury had actually agreed that the defendant was not guilty." Fed. R. Evid. 606(b), advisory committee notes to 2006 amendments (citations omitted). "It should be noted that the possibility of errors in the verdict form will be reduced substantially by polling the jury. Rule 606(b) does not, of course, prevent this precaution." Id.

The Eleventh Circuit has further detailed the wide-ranging inquiries that Rule 606(b) prohibits.

5

> Outside [the] four exceptions, Rule 606(b) prohibits inquiry into . . . whether a juror misunderstood or disregarded evidence, misunderstood or disregarded the judge's instructions, was confused about the legal significance of the jury's answers to special interrogatories or the consequences of the verdict, thought that the jury would be kept out indefinitely until agreement was reached, considered an election of the defendant not to take the stand, believed that recommending mercy would avoid the death penalty, was overcome by weariness or unsound arguments of other jurors, or by a desire to return home.

United States v. Brown, 934 F.3d 1278, 1302-03 (11th Cir. 2019) (internal quotations and citation omitted). "Where the evidence presented to the district court fails to establish that an impropriety occurred that falls within any of the exceptions to the no-impeachment rule, the district court is justified in declining to hold a hearing or further inquire into the matter." Id. at 1303 (citing United States v. Venske, 296 F.3d 1284, 1290 (11th Cir. 2002)).

In United States v. Foster, 878 F.3d 1297 (11th Cir. 2018), the Eleventh Circuit found that Rule 606(b) also barred a trial court from considering a post-verdict, post-discharge juror letter that described various pressures and coercion the other jurors imposed on her during deliberations. The Eleventh Circuit stated:

> [W]e have no doubt that the juror's note in question concerns purely internal matters. It states that the other jurors 'overwhelmingly bullied [her] into focusing on only the [government's] evidence,' 'guided [her] into disregarding all the evidence' that supported [the defendant's] case, and used their 'age' and 'occupational eliteness' as "swaying tactics" during deliberations.

Id. at 1310.

The Foster Court also confirmed "[s]uch statements lie at the heart of evidence made inadmissible by Rule 606(b) of the Federal Rules of Evidence. ... "[T]he juror's letter describes nothing more than typical features of jury deliberations." Id. The Eleventh Circuit has also repeatedly affirmed district courts that have denied motions for a new trial while declining to conduct investigations into jury deliberations. Siegelman, 640 F.3d at 1186 (citing United States v. Cuthel, 903 F.2d 1381, 1383 (11th Cir. 1990) as to "evidence of premature deliberations by the

jury and evidence of intrajury pressure to reach a verdict," United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) as to "duty to investigate arises only in the context of extrinsic influence," and United McElroy by McElroy v. Firestone Tire & Rubber Co., 894 F.2d 1504, 1511 (11th Cir. 1990) as to denial of "defendant's requests to interview the jury members based on allegations of improper deliberations").

Various other appellate courts recognize that delivered, post-polling, post-discharge, jury verdicts are to be respected and undisturbed in these circumstances. See United States v. Jones, 132 F.3d 232, 246 (5th Cir. 1998) ("Jury deliberations entail delicate negotiations where majority jurors try to sway dissenting jurors in order to reach certain verdicts or sentences. An individual juror no longer exposed to the dynamic offered by jury deliberations often may question his vote once the jury has been dismissed."); United States v. Stansfield, 101 F.3d 909, 916 (3rd Cir. 1996) (holding that neither a jury poll nor jury verdict "can be attacked by subsequent juror recantation.") (abrogated on other grounds); see also Peña-Rodriguez v. Colorado, 580 U.S. 206, 249 (2017) (Alito, J., dissenting) ("A juror who is initially in the minority but is ultimately persuaded by other jurors may have second thoughts after the verdict is announced and may be angry with others on the panel who pressed for unanimity.").

"'No per se rule requires the trial court to investigate the internal workings of the jury' after an allegation of juror misconduct, and the 'more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate.'" United States v. Townsend, 502 Fed. Appx. 870, 874 (11th Cir. 2012) (unpub. op.) (quoting Cuthel, 903 F.2d at 1382-83). "It hardly bears repeating that courts are, and should be, hesitant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences." United States v. Nerey, 877 F.3d 956, 972-73 (11th Cir. 2017) (quoting United States v. Sun Myung Moon, 718

F.2d 1210, 1234 (2d Cir. 1983)). "When an inquiry is made into the validity of a verdict, a juror may not testify or provide an affidavit unless there is a question as to 'whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.'" Id. (quoting Fed. R. Evid. 606(b)). Nevertheless, trial courts retain "substantial discretion in choosing the investigative procedure to be used in checking for juror misconduct." United States v. Barber, 147 Fed.Appx. 941, 945 (11th Cir. 2005) (quoting United States v. Register, 182 F.3d 820, 840 (11th Cir. 1999)).

In Barber, after the trial concluded, a juror informed the defendant that another juror had not supported the guilty verdict. The trial court denied the defense's request to conduct their own inquiry as to whether the jury's verdict was unanimous. Instead, the trial court conducted its own post-verdict, post-discharge inquiry of the foreperson, who confirmed that "no irregularities had occurred during the deliberation process and that the verdict was unanimous . . . ." Barber, 147 Fed.Appx. at 945-46. Noting the "substantial discretion in choosing the investigatory technique, as well as the constraints provided by Rule 606," the Eleventh Circuit affirmed the trial court's approach and denial of the defense's request to contact the jurors. Id.

## GOVERNMENT'S RECOMMENDATION

The Government maintains that Rule 606 and Eleventh Circuit precedent demand that the jury's verdict remain respected and undisturbed, whether or not Defendant opts to file a motion for a new trial or mistrial based on post-verdict, post-polling, and post-discharge juror statements. There is no "clear, strong, substantial and incontrovertible" evidence or reason to believe that the jury ever considered extraneous prejudicial information, experienced outside influence, made a mistake on the verdict form, or relied on racial stereotypes or animus to convict the Defendant. Brown, 934 F.3d at 1303.

Should the Court deem that any further investigation or hearing is necessary, the Government respectfully requests that the Court cabin its inquiry solely to the jury foreperson, as in Barber, in order to resolve any possible concern whether there was a mistake on the verdict form. See Fed. R. Evid. 606(b)(2)(C). The Government further recommends that the Court solely ask one (1) question of the foreperson: are there any mistakes on the verdict form?

Should the foreperson respond that the verdict form does not contain any mistakes, the Court should end its inquiry and the jury's verdict must remain respected and undisturbed. Importantly, consistent with Rule 606(b), the Government believes the Court should refrain from asking the foreperson how the jury arrived at its verdict or whether certain jurors were displeased with the verdict, as this is expressly barred by Eleventh Circuit precedent as inquiry into "purely internal matters." See Foster, 878 F.3d at 1310; Brown, 934 F.3d at 1302-03. The Court should also not inquire directly of any other jurors about whether the verdict form contains any mistakes because each juror already, under oath, told the Court that the published verdict was - in fact - their verdict. A juror's subsequent recantation, dissatisfaction, or anger with the deliberation process or the outcome cannot be the basis for impeaching a verdict. Foster, 878 F.3d at 1310.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    */s/ Kevin Gerarde*
Kevin D. Gerarde
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
Fla Bar No. 113844
11200 NW 20th Street, Suite 101
Miami, Florida 33172
Tel: (305) 715-7648
Email: Kevin.Gerarde@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon defense counsel via email on February 9, 2024.

　　　　　　　　　　　　　　　　　　　　　　/s/ *Kevin Gerarde*
　　　　　　　　　　　　　　　　　　　　　　Kevin D. Gerarde
　　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney