UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-cr-20191-KMW(s)

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ANDREW ALTURO FAHIE,

    Defendant.
_____/

### DEFENDANT'S BRIEFING REGARDING JURORS' CONFESSION OF LACK OF UNANIMITY AND MOTION FOR LEAVE TO INTERVIEW JURORS PURSUANT TO LOCAL RULE 11(e)

Defendant, Andrew Alturo Fahie ("Mr. Fahie" or "Defendant"), by and through undersigned counsel files his briefing on the issues relating to the admission of lack of unanimity in one or more of the verdicts as directed by the Court in its Status Conference on February 12, 2024. (DE 229). Further, and alternatively to the procedure requested by the Defendant in his Response to the Government's Brief on Lack of Unanimous Verdicts (DE 228) (the "Response"), and pursuant to Local Rule 11(e) of the Southern District of Florida, Defendant hereby moves the Court for leave to interview jurors in connection with the verdict rendered against Mr. Fahie on February 8, 2024. In support thereof, Mr. Fahie states as follows:

### RELEVANT BACKGROUND

1.    The trial in this cause began on January 29, 2024. Twelve primary jurors and two alternates were sworn to serve as jurors and were provided with the Court's standard preliminary

instructions.[1] At issue were four charges brought by the Government which included a conspiracy to import a mixture and substance containing a detectable amount of cocaine into the United States from a place outside thereof (Count I); conspiracy to commit money laundering (Count II); attempted money laundering (Count III); and interstate travel in aid of racketeering (Count IV). A conviction on Count I carries a mandatory minimum sentence of ten (10) years to life. None of the remaining Counts carry a mandatory minimum sentence.

2. In an accommodation to certain personal time constraints of the jury, the Court adjourned the proceedings each day at 2:30 p.m., save for one day when the jury heard evidence until 6:00 p.m. The proceedings were recessed entirely on Friday, February 2, 2024. Despite this accommodation, one juror (Juror A) sent a note to the Court on Monday, February 5, 2024, during the Government's examination of Mr. William Cortes. (Court Exhibit 1). That note complained of the length of time the "lawyers" were taking to present evidence, requested a "speedy trial" and complained of the imposition on the jurors' (collectively) time. The Court addressed Juror A individually in open court including cautioning that even discussion of the duration of the case was an impermissible discussion among the jurors of the case prior to it being presented to them by the Court for deliberation. Thereafter the presentation of evidence continued. The jury retired to begin its deliberations at approximately 2:00 p.m. on Thursday, February 8, 2024.

3. During its deliberations, the jury presented the Court with three additional notes. The parties were advised of the questions via electronic mail message from Chambers at 4:49 p.m. on Thursday, February 8, 2024. Two questions were exclusively related to requiring assistance

---

[1] Prior to commencement of the presentation of evidence, but after being sworn, one of the twelve primary jurors belatedly advised that the juror had a scheduled medical procedure that had not been disclosed during the jury selection process. The Court excused the juror and sat the first alternate as a primary juror.

during deliberations to arrange for childcare and were answered by the Court, with the agreement by the parties, satisfying the requested assistance. The third note contained a question on the substance of the instructions on Count II and was answered by the Court, in writing, after agreement of the parties.

4. The parties were advised that the jury had reached a verdict at 5:36 p.m. on Thursday, February 8, 2024. The Court reconvened shortly thereafter with the jury and the parties present in the courtroom. The Court examined the verdict and directed the Courtroom Deputy to publish the verdict. The verdict as published in open court was that Mr. Fahie was guilty on all counts, with the listed amounts of controlled substances, conspiratorial objects, and specified unlawful activities listed in the verdict form being selected.

5. The Court inquired whether the Government wanted the jury polled as to its verdict. The Government advised that it did want the jury polled. The polling of the jury was then conducted with each juror responding affirmatively that the verdicts as published were their verdicts.[2] The Court then made its closing remarks thanking the jurors for their service and discharging them.

6. Immediately upon confirming that the jury was back in the jury room by the sound of the closing door, counsel for the defense advised the Court that Juror B had hesitated when polled and engaged in eye contact with both defense counsel indicating some form of concern, and that the same juror had done so for a second time moments later when exiting the jury box, with

---

[2] Of course, the jury had been instructed in the final charge given by the Court that each of its verdicts was required to be unanimous consistent with the pattern jury instruction of the United States Court of Appeals for the Eleventh Circuit.

3

another heightened expression of concern. Defense counsel noted it could offer no more than counsel's impression at that time.

7. The Court thanked counsel for raising the issue, but took no further action, noting its observation that Juror B had engaged in looking around the Courtroom during the proceedings on several occasions. Without more to provide a good faith basis for inquiry at that time, the parties and their respective counsel departed the Courtroom shortly before 6:00 p.m.

8. At 6:07 p.m., the parties were advised by Chambers to immediately return to the courtroom. Shortly thereafter, the Court advised that defense counsel's concern raised immediately after the jury return to the jury room was prescient. Specifically, the Court advised that two members of the jury, Juror B and Juror C, had stayed behind after the remaining ten had departed and advised the Court's staff that the verdicts as published had not, in fact, been their verdicts. The staff member immediately terminated the communications. The Court advised that it appeared that the lack of unanimity might be limited to some, but not all the counts. There was no specificity provided as to what counts the two jurors suggested were not, in fact, unanimous guilty verdicts.

9. The Court and counsel discussed the revelations and what should be said to Jurors B and C. Eventually, the Court brought Jurors B and C (each of whom had remained in the jury room) back into the Courtroom and advised them there would be some form of future contact relating to an investigation or inquiry regarding the information each had provided to the Court's staff. The two jurors were then again discharged.

10. Among the Government's suggestions on how to proceed was that the jury be brought back in to continue its deliberations, which was an apparent recognition or concession that it recognized that the expressed lack of unanimity as to at least some count even after the discharge was valid and problematic. The suggestion of continued deliberation was objected to by the

defense and rejected by the Court because the jury had been discharged and moreover had been advised that its members having been discharged could now discuss the case freely.[3]

11. Counsel for the defense then preserved its intent to seek a mistrial once the facts were flushed out relating to which counts lack unanimity. The Court directed the defense to provide such motion in writing and asked the parties to confer with each other regarding the revelation of lack of unanimity by the two jurors.

12. Further, shortly after being dismissed, Juror C initiated contact with one of the defense team by placing a call to counsel office at approximately 7:38 p.m. That call was forwarded via software used by counsel's firm to counsel's mobile phone. Counsel missed the call from the unknown number and no voice mail message was left. Juror C again initiated contact with defense counsel again on February 9, 2024, at 12:58 p.m. and left a voicemail. Counsel missed the call from the unidentified number again and did not listen to the voicemail. Believing the missed calls to be from a friend of the Defendant's, defense counsel returned the call, asked the individual who had called to identify themselves and briefly spoke to Juror C. A summary of this exchange was provided to the Government and the Court via e-mail on February 9, 2024, at 1:24 p.m. and the parties listened to the voicemail together on February 12, 2024.

13. On February 12, 2024, the Court held a status conference on the juror issues during which Mr. Fahie requested that jury, or at a minimum, Jurors B and C be repolled and argued that such procedure was necessary to avoid a violation of Defendant's Sixth Amendment rights to an impartial, unanimous jury because of the application of Federal Rule of Evidence 606(b). To the extent the Jurors provide different responses to those given when originally polled, Mr. Fahie

---

[3] Counsel for the parties agreed via electronic mail message at approximately 8:24 p.m. the evening of February 8, 2024, that they could not initiate inquiry of the jurors without leave of the Court.

further requested that an inquiry be made into specifically which verdicts lacked unanimity. The Government maintains such inquiry is prohibited by Federal Rule of Criminal Procedure 606(b). At the conclusion of the conference, the Court directed the parties to file supplemental briefs on or before Thursday, February 15, 2024.

## THE COURT SHOULD EXERCISE ITS DISCRETION TO CONDUCT A LIMITED INQUIRY TO DETERMINE WHETHER <u>THERE IS UNANIMITY OF THE VERDICTS</u>

14. As set forth in Defendant's Response, incorporated by reference herein, the Court should exercise its broad discretion to determine whether the verdicts as published were, in fact, unanimous. The Government's assertion in its Supplemental Brief Regarding the Application of Federal Rule of Evidence 606(b) in Cases Where Defendant Faces a Mandatory Minimum Penalty ("Government's Supplemental Brief") (DE 230) that it has been "conclusively" established that the jury's verdicts were unanimous ignores reality. *Id.* at 3.

15. The reality is that two jurors, within scant minutes after polling, volunteered that at least some of the verdicts as published were not their verdicts. Thereafter, one juror initiated contact and volunteered the same information to defense counsel. There is no evidence at present to indicate what circumstances prompted those statements. As it stands now, the record is devoid of any information as to what motivated the jurors' volunteered statements. In short, the reasons might well be those enumerated in Rule 606(b) or later engrafted as an exception by the United States Supreme Court in *Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017) (holding that where there is a clear statement of racial stereotypes or bias to convict, the Sixth Amendment permits the trial court to consider testimony even in the face of the no impeachment rule set forth in Rule 606(b)). The reasons might be "buyer's remorse" as suggested by the Government.

16.     The parties appear to agree that the Court has discretion in deciding whether to conduct the requested inquiry. The defense asks, at this point, only for effectively a repolling of the jury or at a minimum the two jurors in question.[4] It is abundantly clear that that procedure would not impermissibly intrude into the jury's internal thought processes or its deliberations any more than the same procedure did when this jury was polled in the first instance before discharge.

17.     The defense recognizes the restrictions set forth in Rule 606(b) as extended by *Pena-Rodriguez*. We do not suggest a far-flung inquiry at this juncture. Rather, we seek limited inquiry to define the parameters of the issue so that everyone can form reasoned fact-based proposals for a path going forward. The defense also recognizes that finality and the prevention of juror harassment by the losing party underly the reasons for the no impeachment rule. However, as here, where two jurors have affirmatively stated that all the verdicts as published were not their verdicts, there is no finality absent further inquiry. Nor can there be a credible assertion of harassment of the jury by the defense where each juror initiated and volunteered the statements reflecting lack of unanimity.

18.     Without knowing whether Count I is among the verdicts where the jurors advise there was a lack of unanimity, concerns regarding an as applied violation of Defendant's Sixth Amendment right to an impartial jury may be impacted. As discussed during the February 12, 2024 status conference, that tension results from the required ten (10) year minimum mandatory sentence required by a conviction of Count I of the Superseding Indictment.

---

[4] During the status conference on February 12, 2024, the Government argued that the defense was asking for a polling of only the two jurors in question. That is simply not the case as can be seen in the Defendant's Response wherein he requested that "the Court should exercise its discretion to make inquiry of the jury, or at a minimum, certain members thereof, …." *Response* at 1.

19. As noted in its Response, there can be no dispute that the Defendant enjoys the right to a unanimous verdict as part and parcel of the guarantees of the Sixth Amendment. *Ramos v. Louisiana*, 140 S.Ct. 1390 (2020).[5] Response at 9.

20. Contrary to the Government's assertions in its Supplemental Brief, there exists support for a limited inquiry into the validity of a verdict. The United States Court of Appeals for the First Circuit dealt with an analogous situation in *United States v. Villar,* 586 F3d 76 (1st Cir. 2009). In *Villar,* the defendant was convicted of bank robbery. In the hours following the conviction, one juror sent an email to defense counsel and raised a suggestion of impermissible bias on the part of other jurors. *Id.* at 81. The trial court conducted a limited inquiry of the juror (post-verdict) for the purpose of authenticating the voluntarily transmitted email. *Id.* at 78, 81. The trial court declined to inquire further stating that he did not view applicable authority persuasive, including *Tanner v. United States,* 438 U.S. 107 (1987)[6] and did not "believe I'm free to inquire simply because I attach relatively greater weight to the Sixth Amendment interest in a fair trial free from ethnic bias than does the Supreme Court or the drafters of the rule [referring to Rule 606(b)]." *Villar*, 586 F.3d at 81. The trial court viewed the confines of Rule 606(b) as curtailing his discretion to inquiry beyond authenticating the email containing a juror's allegation of bias. *Id.* at 82. ("Here, however, the trial court judge seemed to be making a ruling of law because he found he lacked 'discretion to act' or make any inquiry under Rule 606(b) based only on the juror email.") The First Circuit found that the trial court "did not abuse his discretion or commit an

---

[5] The tension would also encompass Defendant's rights under the Fifth Amendment's due process clause.
[6] *Tanner* and *Villar* were each decided prior to the Supreme Court's decision in *Pena-Rodriguez*.

8

error of law when he held that Rule 606(b) precluded further juror inquiry." *Id.* at 83. The *Villar* court's analysis did not end, however, with Rule 606(b).

21. Instead, the First Circuit proceeded to examine what it deemed the more "powerful argument" of potential violations of the defendant's due process rights under the Fifth Amendment and to the right to an impartial jury under the Sixth Amendment. As noted above, the Supreme Court has made clear that unanimity of a verdict(s) is included within the Sixth Amendment right to an impartial jury. *Ramos v. Louisiana*, 140 S.Ct. 1390 (2020).

22. The *Villar* court cataloged some of the cases it viewed as instances in which other courts had declined to apply Rule 606(b) in instances where there was a possibility of bias.[7] In the end the *Villar* court determined that the trial court did have the discretion to make post verdict inquiry in the alleged ethnic bias and that such inquiry was "necessary to vindicate a criminally accused's constitutional due process and Sixth Amendment rights…." *Villar,* 586 F.3d at 88. The matter was remanded to the trial court for further proceedings. *Id.* at 90.

23. As discussed during the status conference, the jurors indicate a lack of unanimity and if the unanimity concerns Count I, which carries the mandatory minimum sentence, the Defendant has been denied his right to an impartial jury as defined by the Supreme Court. Particularly as to Count I, the Defendant suffers prejudice (if only as to Count I) owing to the

---

[7] We do not suggest that such evidence has been developed and refer to these cases now to support our contention that Rule 606(b) does not **necessarily** defeat constitutionally guaranteed rights as seemingly suggested by the Government in its Supplemental Brief. Indeed, it would appear that at least some of the cases cited did not directly implicate Rule 606(b). For example, the *Villar* Court references the Eleventh Circuit's reversal of the trial court's denial of a defendant's motion for a new trial based on ani-Semitic comments made during the trial. *United States v. Heller,* 785 F,2d 1524 (11th Cir. 1986). In reversing the trial court, however, the Eleventh Circuit noted that the types of bias expressed during the course of the trial (and apparently prior to deliberation) evidenced by the reports of other jurors violated the Constitutional guarantees to a fair and impartial jury. *Id.* at 1527.

statutorily required mandatory minimum sentence, with little to no legal means for the Court to avoid such a sentence should it be so inclined.

The Government's Supplemental Brief attempts to portray the intersection of Rule 606(b) and the constitutional concerns in instances of mandatory minimum sentences as settled law. It is not well settled or settled in the least. While the defendants in the Government's cited cases similarly faced mandatory minimum sentences, none of the opinions analyzed a lack of unanimity or a legal challenge to the verdict against the backdrop of the mandatory minimums. *See e.g. U.S. v. Jones*, 132 F.3d 232 (5th Cir. 1998); *U.S. v. Wettstain*, 618 F.3d 577 (6th Cir. 2020); *United States v. Ewing*, 749 Fed. Appx. 317 (6th Cir. 2018). Indeed, whether a jury or any members thereof can be repolled and/or inquired of when the uncontroverted statements of lack of unanimity involves a mandatory minimum charge appears to be an issue of first impression in this district. Further, most of the cited cases dealt with the extraneous influence exception under Rule 606(b)—an exception that Mr. Fahie does not now contend applies in this case. See *U.S. v. Montes*, 628 F.3d 1183 (9th Cir. 2011); *U.S. v. Cornelius*, 696 F.3d 1307 (10th Cir. 2012); *Tanner v. United States*, 403 U.S. 107 (1987). Rather, Mr. Fahie's position is that the jurors must be repolled in order to determine whether further inquiry must be made into the reasons for the expressed lack of unanimity.

### LOCAL RULE 11(e) PROVIDES AN ADDITIONAL BASIS TO INTERVIEW THE JURORS AS TO THE LACK OF UNANIMITY OF THE VERDICT

24. Additionally, the defense requests leave of Court to interview Jurors B and C to confirm their respective statements to the Court staff and in the case of Juror C to defense counsel. Such interviews do not implicated Rule 606(b) and are expressly provided for in Local Rule 11(e).

25. Such interviews will provide the necessary factual basis that will illuminate the issues before the Court.

26. Southern District of Florida Local Rule 11(e) governs attorney relations with the jury panel and provides, in pertinent part:

> **Relations with Jury**. Before and during the trial, a lawyer shall avoid communicating with a juror in a case with which a lawyer is connected about any subject, whether pertaining to the case or not. **After the jury has been discharged, a lawyer shall not communicate with a member of the jury about a case with which the lawyer and the juror have been connected without leave of Court granted for good cause shown. In such case, the Court may allow counsel to interview jurors to determine whether their verdict is subject to legal challenge, and may limit the time, place, and circumstances under which the interviews may be conducted. The Court also may authorize certain other post-trial lawyer/jury communications in specific cases as the Court may determine to be appropriate under the circumstances.** During any Court conducted or authorized inquiry, a lawyer shall not ask questions of or make comments to a juror that are calculated to harass or embarrass the juror or to influence the juror's actions in future jury service.

S.D. Fla. L. R. 11(e) (emphasis added).

27. As set forth by the Local Rules, the Court has discretion to authorize post-trial communications between counsel and members of the jury for good cause shown, including interviewing jurors to determine whether the verdict rendered is subject to legal challenge. *Id.* The Court has further discretion to allow any other communications where appropriate. *Id.*

28. Jurors B and C's representations to the Court staff and defense counsel in the case of Juror C that the verdicts as published against Mr. Fahie were not their verdict, satisfies the good cause required to interview those jurors to determine whether the verdict is subject to the legal challenges raised by Mr. Fahie in accordance with Local Rule 11(e).

29. Accordingly, to the extent the Court does not find that Mr. Fahie's Supplemental Brief supports repolling and/or inquiring into Jurors B and C and/or the entire jury panel, Mr. Fahie

alternatively submits good cause exists to interview the jurors and the Court must exercise its discretion to authorize such interviews pursuant to Local Rule 11(e).

30.     Undersigned counsel is authorized to represent that the Government objects to the relief sought pursuant to Local Rule 11(e).

## CONCLUSION

For the reasons stated above, Mr. Fahie respectfully requests that this Court repoll the jury in the fashion proposed in its Response and in open court on February 12, 2024 and that it grant its leave to interview Jurors B and C as to their statements to the Court staff and defense counsel and the circumstances pertaining to and prompting such statements.

Respectfully submitted,

**VENABLE LLP**
Theresa M.B. Van Vliet, Esq.
Fla. Bar No. 374040
Email: tmvanvliet@venable.com
Joyce A. Delgado, Esq.
Fla. Bar No. 1002228
Email: jadelgado@venable.com
*Counsel for Defendant Andrew A. Fahie*
200 East Broward Blvd., Suite 1110
Fort Lauderdale, FL  33301
Telephone: 954-453-8000
Telefax: 954-453-8010

By: /s/  Theresa M.B. Van Vliet
        Theresa M.B. Van Vliet, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion has been served upon all parties registered to receive electronic notice via CM/ECF Notification on this 15th day of February, 2024.

By: /s/ Theresa M.B. Van Vliet