UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-CR-20191-KMW

**UNITED STATES OF AMERICA,**

    Plaintiff,

vs.

**ANDREW ARTURO FAHIE,**

    Defendant.
_____/

### OBJECTIONS TO THE PRESENTENCE REPORT AND MOTOIN FOR DOWNWARD VARIANCE

    Defendant, ANDREW ARTURO FAHIE, (hereinafter "Mr. Fahie" or "Defendant"), pursuant to Federal Rule of Criminal Procedure 32(f), makes the following objections to the Presentence Investigation Report ("PSR") [DE 263] and further moves for a downward variance pursuant to Title 18 U.S.C. § 3553(a).

    1.    On February 8, 2024, Mr. Fahie was found guilty by jury trial of Counts One through Four of a five- count Superseding Indictment. Count One charged him with conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 952(a) and 963; Count Two charged him with conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h); Count Three charged him with attempted money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A); and Count Four charged him with foreign travel in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3). Mr. Fahie was not named in Count Five of the Superseding Indictment. The government is seeking forfeiture.

    2.    Mr. Fahie was arrested on April 28, 2022, and was eventually released on bond on June 13, 2022, and has thus spent 46 days in pretrial custody.  Mr. Fahie was remanded to custody

on February 8, 2024, and has remained in continuous custody since that time.

3. Sentencing is currently set for August 5, 2024. Assuming sentencing takes place as currently scheduled Mr. Fahie will have spent an additional 179 days in custody post-conviction before the day of sentencing.

4. Mr. Fahie has reviewed the draft presentence investigation report with counsel. Several areas of factual correction were noted and provided to the Probation Office, with a copy to the Government. The Probation Officer advised that she will include the matters raised by counsel in her addendum.

5. Mr. Fahie reserves the right to address any issues that might be identified in any addendum. For purposes of these arguments Mr. Fahie acknowledges the jury's verdict and notes that he will appeal his conviction in this case and that nothing herein should be deemed an admission of guilt or waiver of any appellate issue.[1]

6. In accordance with Local Administrative Order 95-02 and Rule 32, Mr. Fahie files the following objections to the PSR.

## **OBJECTIONS**

7. Mr. Fahie objects to the suggestion that the offense involved the importation of cocaine. The manufactured scheme in this law enforcement sting called for purported drug dealers to use the port at Tortola in the BVI as a temporary storage facility for a substance that would ultimately be transported to Puerto Rico and then on to Miami, Florida. However, as there were no laboratory tests of any substance, there is no proof that a mixture and substance containing a detectable amount of cocaine would have been transported from a place outside the United States

---

[1] Mr. Fahie respectfully realleges and reserves all previously made objections and motions including those for dismissal, acquittal, and mistrial.

(BVI) into a place inside the United States (Puerto Rico). As repeatedly asserted by the confidential informant and the undercover agent, if tested by authorities in the BVI the "substance" would categorically not test positive for cocaine. Thus, the evidence shows only that any substance that stayed temporarily in the BVI on its way to Puerto Rico was not intended to be a mixture and substance containing a **detectable** amount of cocaine cocaine. Finally, since importation requires transportation from a place outside the United States into a place inside thereof and given the unequivocal representations that the substance temporarily stored in the BVI would be made into cocaine hydrochloride only once it reached Puerto Rico, the facts engineered by the Government in support of its sting operation do not satisfy the elements of the crime of importation. [2]

8. Mr. Fahie objects to **paragraph six of the PSR**, which indicates the purported conspiracy in this case involved Lebanese Hezbollah operatives. The crimes of which Mr. Fahie stands convicted did not involve the Lebanese individuals the Confidential Source identified as Hezbollah operatives. The Government did not dispute that Mr. Fahie was not involved with the Lebanese individuals. Hezbollah has been designated as a foreign terrorist organization since 1997 pursuant to the provisions of the Immigration and Neutrality Act[3]. The Government offered no evidence to support the CS' allegation that these individuals were Hezbollah operatives. The mere suggestion of a wholly unsupported connection between Mr. Fahie and members of a designated terrorist organization is highly prejudicial and inflammatory and requires any reference to

---

[2] During its closing argument the Government suggested that the importation component of the conspiracy charge could be supported by the fact that the "substance" was to travel in international waters. First, the Government's argument misses the point – Mr. Fahie was told, repeatedly, that the substance would categorically **not** test positive for cocaine and would only be subjected to the extraction process once in Puerto Rico – a place inside the United States. There may be other federal statutes that would apply to the story structured by the Government in this sting, but a conspiracy to import a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, is not it.

[3] *See*, https://www.state.gov/foreign-terrorist-organizations/

"Hezbollah" to be removed from the PSR.

9. Mr. Fahie notes that, as to **paragraph 12 of the PSR**, which describes the so called "side deal" between codefendants O. Maynard, K. Maynard and the confidential source (CS), Mr. Fahie notes that he had no knowledge of or participation in the "side deal" in which the CS owned 20 of every 60 kilograms of cocaine he was to front to the Maynards for sale in BVI. The Government stipulated at trial that Mr. Fahie had no knowledge of or involvement in the "side deal." Mr. Fahie respectfully requests that the probation officer revise the PSR to reflect his lack of knowledge of and participation in the "side deal."

10. Mr. Fahie objects to **paragraph 17 of the PSR**, which notes that Mr. Fahie, K. Maynard and O. Maynard "each played an equal role in this jointly undertaken activity" but does not assign a mitigating role adjustment to Mr. Fahie. Although Mr. Fahie's elected position at the time of the alleged offenses would support a two-level enhancement for abuse of trust pursuant to § 3B1.3, his overall conduct is less culpable than the conduct of either K. Maynard or O. Maynard. As noted in the offense conduct section of the PSR, K. Maynard and O. Maynard brought Mr. Fahie into the scheme, which was set up to run even after Mr. Fahie's initial involvement or when he left office and no longer had influence. Moreover, the Maynards were actively conspiring with the CS to commit additional criminal activity with the CS by engaging in the "side deal" about which Mr. Fahie had no knowledge.

11. Accordingly, Mr. Fahie warrants a two-level downward reduction for minor role under § 3B1.2(b). Pursuant to § 3B1.2, comment (n.3(C)), the determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the case. In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court

should consider the following non-exhaustive list of factors: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity.

12. Compared to both K. Maynard and O. Maynard, the degree to which Mr. Fahie understood the scope and structure of the purported scheme was much more limited. They suggested his participation to the CS, and O. Maynard recruited him. Mr. Fahie had no part in planning or organizing the purported scheme, and he exercised no decision-making authority. The Maynards acknowledged that information was withheld from Mr. Fahie. At best the Government's evidence showed that Mr. Fahie was more of a figurehead than an active participant, and although he stood to earn a large amount of money, he did not stand to earn as much as the participants who would be more permanent and who were involved in the "side deal."

### Mr. Fahie's Role Versus K. Maynard's Role[4]

13. At his sentencing on November 20, 2023, the Court found that K. Maynard's conduct warranted a two-level reduction for minor role under § 3B1.2(b). In this case, K. Maynard assisted his mother, O. Maynard, in recruiting Mr. Fahie. K. Maynard served as the conduit of "information" relayed to him by his mother to the CS. Additionally, K. Maynard was the primary

---

[4] Mr. Fahie reserves the right to supplement this argument upon imposition of O. Maynard's sentence.

actor in the large multi-kilogram "side deal" for cocaine to be sold in the BVI. Clearly, he is more culpable than Mr. Fahie, and Mr. Fahie warrants the same reduction and treatment for minor role under § 3B1.2(b).

14. In candor to the Court, an award of a mitigating role reduction will result in the application of the money laundering guideline at §2S1.1 and a higher advisory guideline range. As discussed below, this higher range results from the fact that the conspiracy to import a mixture and substance containing a detectable amount of cocaine is grouped with the offenses relating to money laundering for guidelines calculations purposes. For grouped offenses the higher of the advisory guidelines range is to be applied. Mr. Fahie has discussed this higher guideline range calculation if the mitigating role adjustment is applied and directed that the issue be raised in the spirit of candor.

15. As to **paragraph 23**, the base offense level would be 34, pursuant to §§ 2S1.1(a)(1), 2D1.1(a)(5)(iii) and 3D1.3(a). The purported drug "amount" in this case warrants a base offense level of 38[5]. However, because Mr. Fahie's conduct warrants a mitigating role adjustment under § 3B1.2, the base offense level should be decreased by four level to 34[6]. After an adjustment for minor role within the drug guideline, § 2D1.1, the use of the money laundering guideline, § 2S1.1, creates the greatest offense level and is used in accordance with § 3D1.3(a)[7] because the offenses are grouped for guidelines calculation purposes.

---

[5] Section 2D1.1(c)(1), which indicates that an offense involving 450 kilograms or more of cocaine has a base offense level of 38. Of course there was no mixture or substance containing a detectable amount of cocaine involved in this sting operation, but we recognize the applicability of this guideline to the quantity decided on and announced the CS, while reserving all arguments raised in this case.

[6] Section 2D1.1(a)(5)(iii), which indicates that the base offense level involving 450 kilograms of cocaine is determined by the Drug Quantity Table, except in case where the defendant receives a mitigating role. In the case of a defendant who receives a mitigating role adjustment under § 3B1.2 whose offense level is 38 based on the Drug Quantity Table, the base offense level is reduced by four levels.

[7] The counts of conviction are properly grouped under § 3D1.2(c). According to § 3D1.3(a), "In the case of counts grouped together pursuant to §3D1.2(a)–(c), the offense level applicable to a Group is the offense level, determined

16. As to **paragraph 23**, the offense level calculation should only include a two-level increase for a violation of 18 U.S.C. § 1956.

17. As to **paragraph 26**, if Mr. Fahie is granted a mitigating role adjustment, resulting in the application of the money laundering guidelines because of the grouping of the offenses, the upward adjustment for abuse of trust under § 3B1.3 should be removed as the alleged conduct warranting that enhancement pertains only to the alleged drug importation scheme and not the money laundering scheme[8].

18. As to **paragraph 28**, the adjusted offense level therefore should be 36.

19. As to **paragraph 31**, the total offense level should be 34 after the 2 level reduction because Mr. Fahie is a Zero Point Offender as noted in **paragraph 29**.

20. As to **paragraph 63**, based on a total offense level of 34 and a criminal history category of I the advisory guideline imprisonment range would be **151 to 188 months**.

21. As to **paragraph 70**, advisory guideline fine range should be $35,000 to $10,000,000. The PSR correctly notes at **paragraph 61** that Mr. Fahie does not have the ability to pay a fine.

## MOTION FOR A DOWNWARD VARIANCE

22. Mr. Fahie moves for a sentence that is no more than the statutorily required minimum sentence of 120 months as to Count One[9], which, in accordance with *United States v.*

---

in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group."

[8] As noted in § 2S1.1, comment.(n.2(C)), "Notwithstanding §1B1.5(c), in cases in which subsection (a)(1) applies, application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived."

[9] Because Mr. Fahie exercised his right to trial, he did not receive the benefits of the "safety valve", namely a two-level reduction under §§ 2D1.1(b)(18) and 5C1.2(a)(1)-(5) and relief from any statutorily required minimum sentence under 18 U.S.C. § 3553(f)(1)-(5).

*Booker*, 543 U.S. 220 (2005), is a reasonable sentence that adequately reflects the seriousness of the offense and provides just and reasonable punishment.

23. As a result of *Booker*, the sentencing guidelines are advisory. However, the Court must correctly calculate the guidelines and then consider the factors outlined in 18 U.S.C. § 3553(a).

24. Title 18, United States Code, Section §3553(a) contains the factors the Court must apply in devising a reasonable sentence. Importantly, this statute contains "an overarching provision instructing district courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing under that provision." *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). The §3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. §3553(a)(1)-(7).

25. "It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). In fashioning a reasonable sentence, the Court has considerable discretion to weigh each of the §3553(a) factors. Unless otherwise limited by law, the Court may consider, without limitation, any "information concerning

the background, character, and conduct of" the defendant. 18 U.S.C. §3661; U.S.S.G. §1B1.4. The ultimate goal is a reasonable sentence, *United States v. Talley*, 431 F.3d 784, 785 (11th Cir. 2005), and one which is no greater than necessary. 18 U.S.C. §3553(a).

26. While the Court must accurately compute the Sentencing Guidelines range, that advisory range is not necessarily entitled to more weight than other §3553(a) factors. A sentencing court "must not presume that the Guidelines range is reasonable" but instead "must make an individualized assessment based on the facts presented." *Id*. "There are . . . many instances where the Guideline range will not yield a reasonable sentence." *United States v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006); see also *Nelson v. United States*, 555 U.S. 350, 352 (2009) (holding that "the Guidelines are not only not mandatory on sentencing courts; they are not presumed reasonable") (emphasis in the original). "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable." *Nelson*, 555 U.S. 350 at 352. It is the sentencing court's duty to "make its own reasonable application of the 3553(a) factors, and to reject the advice of the Guidelines" if after due consideration the result they suggest does not comport with the sentencing court's view of an appropriate sentence. *Kimbrough*, 128 S. Ct at 577 (Scalia concurring).

<u>**The Nature And Circumstances Of The Offense And
The History And Characteristics Of The Defendant**</u>

27. The Court is familiar with the nature and circumstances of the offenses of conviction having presided over Mr. Fahie's trial and all pre-trial and post-trial matters, including the unique and troubling matters involve the Government's (notably excluding the prosecutors) attempts to cover-up CS's history of adverse credibility findings and the uncontested evidence that Mr. Fahie advised a third party that he was gong to reach out to authorities in the BVI to arrange for the arrest of the CS and the seizure of proceeds portrayed by the CS and the undercover agent

to have been proceeds of unlawful activity.  Of course, the timing of Mr. Fahie's arrest prevented any such actions from being taken.

28. Mr. Fahie is a 53-year-old male, who outside of his conduct in the instant offense, has a led a life of service toward others.  Outside of his official political duties in the BVI, Mr. Fahie has volunteered his time to making education available to everyone, including the underprivileged, in the BVI.  He has also demonstrated his compassion by providing counseling services to persons who lost children at birth.  He operated a non-profit organization called Bembella, which successfully relied on word of mouth to accomplish its mission.  Furthermore, in his own family, he and his wife have provided a college education for both of their two daughters as well as post graduate studies which one daughter has completed and the other intends to embark on after her undergraduate studies.

### The Need To Reflect The Seriousness Of The Offense, Promote Respect For The Law And Provide Just Punishment

29. A sentence of 120 months imprisonment for the offenses of conviction that were the result of a sting operation adequately reflect the seriousness of the offense, promotes respect for the law and provides just and reasonable punishment.

### The Need To Afford Adequate Deterrence And Protect The Public Further Crimes Of The Defendant

30. A sentence of 120 months imprisonment will adequately immobilize and deter Mr. Fahie from committing further crimes and offer a strong measure of deterrence to others.

### The Need To Protect The Public

31. A sentence of 120 months imprisonment will adequately protect the public where, as here, there is no allegation that Mr. Fahie was involved in any violent activity or conspiracy.

### The Need To Provide The Defendant With Educational
### Or Vocational Training Or Medical Care

32. Mr. Fahie has no special needs for educational or vocational training or presently, for medical care.

### The Kinds Of Sentences Available

33. The Court must impose a mandatory minimum sentence of 120 months incarceration, with credit for time served. The advisory sentencing guideline range is set forth above. Owing to the fact that Mr. Fahie is removable upon completing service of his sentence, he will not be released to a halfway house or home confinement. Such transitionary releases commonly take place at our about 12 months prior to the expiration of the sentence.

### The Need To Avoid Unwarranted Sentencing Disparity
### Between Defendants In The Southern District Of Florida

34. According to the United States Sentencing Commission[10], in Fiscal Year 2023 in the Southern District of Florida, the Court sentenced 178 powder cocaine cases having a criminal history category of I, as in Mr. Fahie's case. Of those cases, 97 (54.5%) received a downward variance that did not involve a government motion or concurrence. Clearly, a sentence of 120 months imprisonment as to Mr. Fahie would not constitute an anomaly and will prevent sentencing disparity.

### The Need To Avoid Unwarranted Sentencing Disparity Between Codefendants

35. In this case, codefendant K. Maynard, who is no less culpable and is arguably more culpable than Mr. Fahie, received a minor role reduction under § 3B1.2(b) and was sentenced to 57 months imprisonment. K. Maynard did not receive a reduction in his sentence for substantial

---

[10] *See* https://ida.ussc.gov/analytics/saw.dll?Dashboard

assistance. K. Maynard assisted in recruiting Mr. Fahie and K. Maynard and O. Maynard intended to and did exploit that position as well as O. Maynard's. Yet Mr. Fahie is subject to a statutorily required minimum sentence of 120 months imprisonment, which is over twice the sentence imposed on K. Maynard, an equal or more culpable participant. While the Court cannot sentence Mr. Fahie below the minimum mandatory, it can treat him as close to the level his culpability warrants, which in this case is 120 months imprisonment, with credit for time served. Mr. Fahie reserves the right to supplement his arguments as to sentencing disparity after sentence is imposed on O. Maynard.

## **CONCLUSION**

36.     Mr. Fahie, a man of conscience who cares for others over himself, stands before the Court to be sentenced for serious crimes that constitutes a marked deviation, and indeed aberrant behavior, from an otherwise law-abiding life of public service and prays that this Court impose a sentence that is no more than the statutorily required minimum sentence of 120 months imprisonment.

Dated: June 7, 2024.

                                                                Respectfully submitted,

                                                                **VENABLE LLP**
                                                                *Counsel for Defendant Andrew A. Fahie*
                                                                200 East Broward Blvd., Suite 1110
                                                                Fort Lauderdale, FL  33301
                                                                Telephone: 954-453-8000
                                                                Telefax: 954-453-8010

                                                                By: /s/ Theresa M.B. Van Vliet
                                                                        Theresa M.B. Van Vliet, Esq.
                                                                        Fla. Bar No. 374040
                                                                        tmvanvliet@venable.com
                                                                        Joyce A. Delgado, Esq.
                                                                        Fla. Bar No. 1002228
                                                                        jadelgado@venable.com

**RICHARD F. DELLA FERA, P.A.**
500 East Broward Blvd., Suite 1710
Fort Lauderdale, FL 33394
Telephone:     (954) 848-2872
Facsimile: (954) 848-2873
Email: rdf@rdfattorney.com
           admin@rdfattorney.com

By: */s/ Richard F. Della Fera*
       RICHARD F. DELLA FERA
       Fla. Bar No. 66710

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served upon all parties registered to receive electronic notice via CM/ECF Notification on June 7, 2024.

By: /s/ *Theresa M.B. Van Vliet, Esq.*