UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:22-CR-20191-KMW(s)

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ANDREW ALTURO FAHIE,

    Defendant.

_____/

**DEFENDANT FAHIE'S REPLY AND RESPONSE TO GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE REPORT**

Defendant, ANDREW ALTURO FAHIE ( "**Mr. Fahie**" or "**Defendant**"), hereby files his Reply and Response ("**Reply**") to the Government's Objections to the Presentence Investigation Report and Response to Defendant's Objections to the PSI ("**Government's Objections**") (DE 283).

    1.    On February 8, 2024, Mr. Fahie was found guilty by jury trial of Counts One through Four of a five-count Superseding Indictment. Count One charged him with conspiracy to import five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 952(a) and 963; Count Two charged him with conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h); Count Three charged him with attempted money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A); and Count Four charged him with foreign travel in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3). Mr. Fahie was not named in Count Five of the Superseding Indictment. The Government is seeking forfeiture.

    2.    Mr. Fahie reserves the right to address any issues that might be identified in any addendum. For purposes of these arguments Mr. Fahie acknowledges the jury's verdict and notes

1

that he will appeal his conviction in this case and that nothing herein should be deemed an admission of guilt or waiver of any appellate issue.[1]

3. The Government's Objections argue for a sentencing enhancement based on U.S.S.G. § 3B1.1 claiming that Mr. Fahie was an "organizer or leader of a criminal activity that involved for or more participants or was otherwise extensive." Government Objections at 1. At the same time, the Government argues for the additional enhancement (already in the PSI and to which Mr. Fahie did not specifically object) of a two (2) point increase for abuse of trust. Government Objections at 11. The Government correctly notes that assessment of an organizer or leader designation would also make Mr. Fahie ineligible for the two (2) level zero-point offender reduction. *Id.*

4. The Government sets forth its objections to Mr. Fahie's argument relating to the nature of the alleged conspiracy. *Id* at 9-10. The Government objects to Mr. Fahie's request for a downward departure for Mr. Fahie's minor role in the sting conspiracy. *Id.* at 11.

5. The Government does not oppose removal of references to Hezbollah or clarifying in the PSI that Mr. Fahie had no knowledge of, or participation in, the "side deal" involving a separate conspiracy involving Ms. Maynard, her son Mr. Maynard and the CS to import and distribute 60-kilogram shipments of cocaine into the BVI on a regular basis which Mr. Maynard, working with his own independent drug network, would then distribute. *Id.* at 10.

## THE APPLICATOIN OF THE ORGANIZER LEADER ENHANCEMENT IS NOT APPROPRIATE

### The Government Has Not Established that Mr. Fahie was an Organizer or Leader

---

[1] Mr. Fahie respectfully realleges and reserves all previously made objections and motions including those for dismissal, acquittal, and mistrial.

2

6. The Government's factual assertions in support of its quest to declare Mr. Fahie an organizer or leader of a crime involving five (5) or more participants, or one that that was otherwise extensive, are belied by the record in this case.

7. First, anyone who heard the recordings of conversations and meetings in this case cannot help but recognize that the driving force behind every conversation, every aspect of the conspiracy at issue was the CS. While Mr. Fahie accepts the jury's verdict for purposes of these proceedings, to suggest that he was an organizer or leader of these events is simply at odds with the Government's evidence in the case. A scheme, it must be noted, that the Government constructed and controlled at all turns. It certainly could have constructed the CS to not take the lead at every instance. The Government chose not to do so.

8. The Government asserts that Mr. Fahie exercised "decision-making authority" in connection with the crimes of conviction by virtue of his "approval" of "the CS's drug trafficking proposal at the March 7, 2022, meeting" and when he "directed Oleanvine Maynard and Roxanne Sylvester to travel to Miami to transport his $500k (sic) payment back to Tortola." Government Objections at 2. Presumably, the Government means the meeting with Mr. Fahie, Ms. Maynard, and the CS that took place on April 7, 2022 in Tortola. GX 7b.

9. First, the Government asserts that Mr. Fahie chose the location of the meeting place. While technically true, the Government's failure to put that choice into context is misleading. During the March 22, 2022, recorded telephone conversation among Ms. Maynard, Mr. Maynard, and the CS, the time and location for a potential meeting with Mr. Fahie was discussed (among other things as discussed below). The CS pushed for a meeting in Miami, but Ms. Maynard indicated that would not be possible owing to Mr. Fahie's schedule and the fact that his mother, who lives in the BVI, was ill and he was caring for her. After some discussion on possible dates

3

for the meeting the CS decided the date of the meeting (April 7, 2022). GX 3b. The Maynards and the CS also discussed the fact that would be when everything would be explained to Mr. Fahie. Previous to that Ms. Maynard had told the CS that she intended to present the CS' proposition to Mr. Fahie as that of an investment opportunity. In a follow up call on March 29, 2022, the CS and the Maynards also discussed the logistics for the meeting. The CS repeated his concerns about his security, and nonetheless proposed meeting at two restaurants, citing the excellence of their food. Ms. Maynard advised that she would ask Mr. Fahie if he was comfortable meeting in a public setting. GX 4b.

10. The CS and the Maynards speak again on March 31, 2022, and relay to the CS certain requirements Mr. Fahie had as a precondition to meeting the CS including identifying information about him. GX 5b. The CS repeats his own concerns for his safety.

11. On April 1, 2022, the CS has his first contact with Mr. Fahie in a telephone conversation orchestrated by the Maynards. Ms. Maynard was present during the phone conversation. The CS affirmatively asks Mr. Fahie where he would prefer to meet, after a lengthy discussion about each wanting to assure their security and meeting in a private setting. GX 6b.

12. To suggest merely that Mr. Fahie was the sole moving factor behind the date and location of the meeting is presented by the Government without the context of all the relevant discussions. Mr. Fahie's involvement in selecting a location for the meeting provides no evidence that he was an organizer or leader.

13. The Government also highlights Mr. Fahie's position as the Premier and the fact that he was, therefore, in a position to direct customs officials as evidence in support of his exercise of decision-making authority. Government Objections at 3. That, of course, was the constant argument made by the Government at trial and, while reserving all rights, it provides the factual

support for the abuse of trust enhancement. Similarly, the Government asserts that Wade Smith, the then head of BVI Customs, was among the 5 or more people Mr. Fahie "supervised" in the charged crimes. Again, the Government ignores its own evidence which belies its position.

14. Mr. Smith's potential involvement was discussed among the CS and the Maynards before Ms. Maynard ever spoke to Mr. Fahie. In the March 20, 2022 in person meeting among the Maynards and the CS, they first discuss the side deal involving the importation and distribution of cocaine in the BVI that was to be spearheaded by Mr. Maynard, although Ms. Maynard was to receive a percentage of the profits from the sale of cocaine on the island. As the Government concedes, Mr. Fahie had no knowledge of, nor involvement in, the Maynards' side deal with the CS. Notably, however, Mr. Maynard tells the CS during this meeting that the Customs official (Mr. Smith) had already given he and his mother the "ok" to the CS's plan. The CS then specifically advised the Maynards that Ms. Maynard is his "number one" and the others, referring to Mr. Smith and Mr. Fahie, are second to her.[2] The CS stresses that Ms. Maynard is his point of contact for the charged conspiracy and that he knows she has no "boss" when it comes to drug trafficking. GX 2b. The CS repeats this observation after his initial meeting with Mr. Fahie on April 7, telling Mr. Maynard that Ms. Maynard "controls" Mr. Fahie. GX 7b at 247.

15. Most telling, however, is the Government's failure to acknowledge that Ms. Maynard advised the CS in a later call on March 20, 2022, that Mr. Fahie advised that Mr. Smith would not be needed and that he, Mr. Fahie, would speak to Mr. Smith if he was needed. To suggest that Mr. Fahie recruited Mr. Smith into the charged conspiracy is not supported by the totality of the evidence. The mere fact that a phone record reveals that there was a telephone call between Mr. Smith and Mr. Fahie on April 1, 2022, without any evidence about the nature of the

---

[2] *See also,* GX 7b at 259. ("[t]he head coach is number two. He's the politician.") "Head Coach" is the name assigned to Mr. Fahie by Mr. Maynard and the CS

call or what was discussed renders no support for the Government's contentions. GX 3b. As the Court is aware from having presided over the trial, Mr. Fahie's position required communications with a host of people, including Mr. Smith, regarding government business daily.

16. The Government next suggests that the $500,000 payment to Mr. Fahie was to pay "bribes." Government Objection at 3-4. Notably, the Government does not provide a citation to where this request for "bribe" money is contained in the evidence, as opposed to the Government's post-trial theory. Of course, the Government's theory at trial was that Mr. Fahie was greedy and that is why he wanted the money as opposed to the payment of bribes to unknown and unidentified individuals. The first discussion of payment of bribes takes place on April 7 **after** Mr. Fahie is no longer involved in meeting with the CS. GX 7b. After the meeting with Mr. Fahie concluded, the CS meet with the Maynards. The CS makes clear that Mr. Fahie, as a politician is not to be trusted. The CS then directs Mr. Maynard to "buy" law enforcement that Mr. Maynard knows. GX 7b at 245. Mr. Maynard confirms that he has at least two (2) "high ranking" officials on the payroll at the time of the meeting. *Id.* at 245-246. Finally, at the last meeting on April 27, the CS makes clear that the $500,000 does not include any money for expense (bribes): "I'm not touching your money. Yours is yours. Wherever we have expenses – like for example you say, 'I need this for this, and this is the expenses that it gonna cost me,' you let me know, we give you the money in advance so you can fix it." GX 12b at 92.

17. The Government argues that Mr. Fahie ordered Ms. Maynard to go to Miami. Government Objection at 4. The Government cites to comments made during the course of the April 7 meeting with Mr. Fahie and the CS. GX 7b. It should be noted, however, that the comment quoted by the Government regarding having people around to execute documents, has more to do with timing of a trip to Miami. Mr. Fahie does not dispute that he encouraged Ms. Maynard to go

6

to Miami. That alone, however, is insufficient to provide the underpinning of an organizer leader enhancement.

18. The Government next turns to Mr. Fahie's participation in the charged crimes. Government Objection at 4. The Government argues that when Mr. Fahie excused both Ms. Maynard and Ms. Sylvester from the April 27, 2022, evening meeting in Miami that he positioned himself as the "leader of the cocaine importation scheme." Government Objection at 4. Following the Government's logic, clearly each of the Maynards must also have been "leaders of the cocaine importation scheme" given their many contacts with the CS while excluding Mr. Fahie and their participation in the side deal which the Government concedes was beyond Mr. Fahie's knowledge and participation. Mr. Fahie absolutely had conversations with the CS and UC without Ms. Maynard and Ms. Sylvester being present. It was during these conversations that Mr. Fahie was pressing for details regarding specifics of how things would happen and how the CS and UC were going to store the money on the plane. Mr. Fahie's position continues to be that those, and other, conversations were designed to obtain information about the CS's scheme so that he could report it. That position was not accepted by the jury.[3] What is clear, however, is that Ms. Sylvester had no knowledge of the charged conspiracies. The Government's star witness, Ms. Maynard, so testified during the Government's case in chief. Ms. Maynard's testimony on that score is buttressed by the discussions regarding Ms. Maynard throughout the recorded conversations. Rather than establishing control it is evident that Mr. Fahie was attempting to continue to shield Ms. Sylvester from the details of the CS's plan and thus excused her, and to maintain appearances, Ms. Maynard as well.

---

[3] In making that statement Mr. Fahie notes that he also reserves all rights and previously made objections, positions and motions relating to the juror issues.

19. The Government suggests that Mr. Fahie "recruited accomplices" in the person of Mr. Smith and Ms. Sylvester. Government Objection at 5. As noted above there is affirmative evidence from Ms. Maynard that Ms. Sylvester had no knowledge of the charged crimes. As discussed above there is no evidence that Mr. Smith had any knowledge of the charged crimes (other than Mr. Maynard's uncorroborated comment on the recording from.) GX 2b.

20. The Government notes that Mr. Fahie was to get a larger share of "proceeds" than either of the Maynards (referring we assume exclusively to the charged crimes as opposed to consideration of the side deal). We do not dispute that the discussions led by the CS envisioned a scenario where Mr. Fahie would receive more than either of the Maynards.

21. The Government asserts that Mr. Fahie "maintained and exercised final approval authority over the importation scheme." Government Objection at 6.[4] As can be seen through this Reply, is it obvious that the lead actor in these negotiations, the person exercising control was the CS. While we acknowledge that he was playing a role, he and the Government were the writers, producers, and directors of the show. The suggestion that Mr. Fahie exercised final approval and authority over the importation scheme is also, frankly, belied by the discussions with Ms. Maynard in the first meeting she had with the CS in which he was perfectly willing to press forward with her, and it was Ms. Maynard who raised Mr. Fahie. GX 2b at 30, 39, 43). The Government's suggestion that Mr. Fahie's involvement was "necessary" is nonsensical given the initial conversations among the Maynards and the CS.

22. The Government also argues that Mr. Fahie "participated in planning" how the money was to be packaged so it would not be detected without citation to any support. Government Objection at 6. There is no support for this contention. There is conversation in the meeting on

---

[4] Mr. Fahie incorporates by reference his arguments relating to whether the facts establish a conspiracy to import. For the purposes of this argument, we address the "importation."

April 28 in the evening regarding how the money was going to be stored in the plane, but any objective review of that conversation reveals that Mr. Fahie is simply making an inquiry as opposed to directing the CS how it should be placed and contained. GX 12b at 104–105. To be sure, Mr. Fahie announced "arrangements" to have someone pick up the money, which is hardly evidence of control when one recalls that his plan was to proceed from Miami to Pennsylvania relating to his children. Most importantly however, by this point or soon thereafter, the Government's witness Ms. Maynard confirmed that Ms. Sylvester had been told by Mr. Fahie to alert the authorities to seize the money when the plane arrived in the BVI the following day.

23. The Government next discusses the nature and scope of the illegal activity. Government Objection at 7. It bears repeating that the "scope" of the CS's performance was whatever the Government wanted it to be. Mr. Fahie cannot dispute that the CS's script was what it was. However, here again, the Government asserts that it is an affirmative fact that that there were "bribes paid to corrupt the high-ranking Customs officials…" Government Objection at 7. Not surprisingly, the Government provides no citation to any evidence to support its brash and baseless assertion. There is no such evidence in this record.[5]

24. Next the Government suggests that Mr. Fahie's "control and authority over others cannot be overstated." Government Objection at 7. We certainly agree that facts should not be overstated. The suggestions and usage of incomplete factual presentations by the Government throughout its pleading take liberty with the totality of the facts and the context. However, in agreeing that Mr. Fahie's sentencing guidelines calculation appropriately includes an enhancement

---

[5] The Government seeks to inject local BVI politics into this sentencing in its aside about the UK Commission of Inquiry. The innuendo left by the Government's footnote suggests that Mr. Fahie was the subject or target of the COI inquiry regarding "corruption." Clearly not having bothered to read the COI report, it is perhaps understandable why the Government errs in its characterization and innuendo. Mr. Fahie will gladly make any presentation the Court desires regarding the COI should the Court deem it relevant to this proceeding. Otherwise, the Court should make clear that it is not considering the COI Report in any fashion and reject the Government's attempt.

for abuse of trust given the position here held. Here however, the Government (who agrees with the abuse of trust enhancement) seeks to effectively double count by using Mr. Fahie's limited role, based as it points out in its Objections on his position, to both suggest he is an organizer leader as well as having abused a position of trust. "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully account for by application of another part of the Guidelines." *United States v. Dudley,* 463 F.3d 1221, 1226-027 (11th Cir. 2006).

Participants in the Charged Criminal Activity

25. The Government correctly notes that accepting the record herein for these purposes, there are three (3) participants in the charged criminal activity: Mr. Fahie, Ms. Maynard, and Mr. Maynard. As noted above for purposes of the Government's proposed enhancement "[a] '**participant**' is a person who is criminally responsible for the commission of the offense but need not have been convicted. A person who is not criminally responsible for the commission of the offense (*e.g.* an undercover law enforcement officer) is not a participant." USSG 3B1.1 Application Note 1. The operative phrase is "criminally responsible." The Government asserts that the remaining necessary participants in the **charged** crimes (as opposed to the side deal) are Mr. Cisse, Ms. Sylvester, Mr. Smith and Mr. Maynard's "handlers" at the airport in Tortola. The Government has failed to shoulder its burden of providing evidence for this requirement of the enhancement it seeks.

26. The Government repeats it assertion that Ms. Sylvester and Mr. Smith were participants in the charged conspiracy. Government Objection at 8. As discussed above, the Government's assertions are devoid of actual evidence that would suffice for even the most draconian among us to conclude that the Government had established that Ms. Sylvester and Mr.

Smith were accomplices or co-conspirators in the charged activity.[6] To the contrary the Government's witness Ms. Maynard confirmed that Ms. Sylvester had no knowledge of the charged conspiracy.

27. Next the Government asserts that Baye Cisse was a participant in the charged conspiracy. Government Objection at 8. Here to the Government bears the burden of showing that Mr. Cisse is a criminal participant in the crimes charged with the appropriate required levels of knowledge and intent. Here too it has missed the mark. The Government asserts that "telephone messages" "show" that Mr. Fahie consulted with Mr. Cisse regarding whether to "join the CS's importation scheme." That is not the undersigned's recollection and unfortunately the Government did not transcribe and provide the records of these "messages" that would corroborate its accusation against Mr. Cisse. Instead, what the evidence did clearly show is that Mr. Cisse was consulted by Mr. Fahie to check on whether certain individuals were, in essence, political enemies, including the CS, Ms. Maynard, Ms. Sylvester and those individuals working on the Commission of Inquiry. GX 15 c3; DX 2. There is an absence of evidence upon which someone could conclude that Mr. Cisse knew about the charged conspiracy, much less knowingly and intentionally joined in it.

28. Lastly, the Government argues that Mr. Maynard's "handler" at the airport in Tortola was a participant in the charged criminal activity. Government Objections at 9. The Government references various discussions regarding the CS's requirements for landing at the airport, but again, fails to present the totality of the relevant discussions and indeed the start of the discussions, which put the later communications into context. The CS and Mr. Maynard spoke on

---

[6] It is axiomatic that to be criminal responsible for a conspiracy one must knowingly and intentionally join in the conspiracy. Similarly, to establish accomplice liability in the Eleventh Circuit "the prosecution must show that the defendant associated herself with a criminal venture, participated in it as something she wished to bring about, and should be her actions to make it succeed." *United States v. Joseph,* 709 F.3d 1082, 1102 (11th Cir. 2013).

11

April 19, 2022. GX 8b. The discussion beings with the CS speaking about the flight from BVI the following week which is believed to be a reference to the flights to Miami. The CS notes that this flight will be "white" – meaning that it would be filed with flight planes and that they will be giving all the information relating to the flight. *Id.* at 2. In fact, even if our assumption is correct, Mr. Fahie had literally no involvement in giving directions to Mr. Maynard. As Ms. Maynard noted in her testimony, Mr. Maynard and Mr. Fahie never spoke. Rather it is the CS who was giving Mr. Maynard directions regarding this small portion of the conversation that dealt with the charged conspiracy. The remainder of the conversation on April 19 revolves primarily about the side deal and the use of airport facilities and corrupt personnel to secure the arrival of cocaine which the Maynards would sell on the island.

29. The Government also points to text or chats between Mr. Maynard and the CS in mid-April 2022 regarding information needed for purposes of the "arrival" of the CS's plane from Miami to Tortola. Government Objections at 9. GX 20c4 at 125-126. Review of the evidentiary support offered by the Government shows there is no support for the assertion that the "handler" had any knowledge that this particular planned flight was anything out of the ordinary or anything but a legitimate flight. Indeed, the texts and chats confirm that Mr. Maynard was told that among other identifying information a flight plan would be required to be filed further mitigating against the assertion that the "handler" was a participant in criminal activity as that term is defined by the Guidelines. *See* Reply at ¶¶ 22-31.

30. The Government finally suggests that Mr. Fahie was responsible for supervising Mr. Maynard's workers in meeting the arrival of his mother and Ms. Sylvester on April 28, 2022, at the airport in the BVI and that these unidentified individuals were among the participants in the charged crimes. The precise portions of the recorded undercover meeting on April 27, 2022,

among the CS, the UC, Ms. Maynard, and Mr. Maynard (on the phone) make clear that Mr. Fahie was not giving directions or supervising Mr. Maynard but rather the CS was doing so. Mr. Fahie is not involved in the meeting in any fashion. Indeed, the bulk of the first part of the meeting when Mr. Maynard is on the phone involves the side deal between the Maynards and the CS. Mr. Maynard's claimed unidentified workers (if they existed) are not participants in the charged conspiracy because there is no evidence that they (whoever "they" are) were not "criminal responsible" as that term is defined by the Guidelines.

31. The conversation about the plan to return with the money from Miami to the BVI on April 28, 2022, begins at GX 11b at 44, line 13. The CS gives Mr. Maynard instructions; the CS tells Mr. Maynard to meet his sister; the CS tells Mr. Maynard when he should meet his sister; the CS tells Mr. Maynard that he will tell Mr. Maynard if the time changes; the CS tells Mr. Maynard what he wants Mr. Maynard to do with $30,000 that the CS is having his sister give to Mr. Maynard; the CS tells Mr. Maynard he will give Mr. Maynard specifics regarding the arrival of the plane from Miami to Tortola the following day; the CS confirms with Mr. Maynard that they have control of the tower; the CS tells Mr. Maynard that what **he** is planning is to finalize his plans in the meeting they are having that evening. *Id.* at 44-48. So, while the Government accurately notes that Mr. Maynard was to meet the CS's sister and arrange for assistance at the airport it wholly fails to put the conversations from its exhibits into context and advise the Court that it is the CS, not Mr. Fahie, who is issuing the instructions, directions, and orders. While Mr. Maynard's workers (if they existed) there is no evidence that they (whoever "they" are) were "participants" as that term is defined by the Guidelines.[7]

---

[7] "A '**participant**' is a person who is criminally responsible for the commission of the offense but need not have been convicted. A person who is not criminally responsible for the commission of the offense (*e.g.,* an undercover law enforcement officer) is not a participant." USSG 3B1.1 Application Note 1.

The Government's Sting Script Was Not Otherwise Extensive

32. Unless one accepts that the Government's script in fact did call for a mixture and substance that did **not** contain a detectable amount of cocaine, and that the process of extraction would be completed in Puerto Rico then the Government's sting script was no difference or more complex that scores of "importations" that have taken place over at least the 50 some years in locations across the United States. A material was going to be put on a ship. The ship would moor off a coast for a period of days and then leave. There are thousands of maritime import cases with the same scenario.

## CONCLUSION

33. For the reasons stated, the Government's request for imposition of the four (4) point organizer/ leader enhancement under U.S.S.G. § 3B1.1 should be denied.

34. Mr. Fahie also requests that the relief sought in this previously filed objections and motion for a downward variance be granted. (DE 274).

Dated: June 17, 2024.

Respectfully submitted,

**VENABLE LLP**
*Counsel for Defendant Andrew A. Fahie*
200 East Broward Blvd., Suite 1110
Fort Lauderdale, FL  33301
Telephone: 954-453-8000
Telefax: 954-453-8010

By: /s/  Theresa M.B. Van Vliet
    Theresa M.B. Van Vliet, Esq.
    Fla. Bar No. 374040
    tmvanvliet@venable.com
    Joyce A. Delgado, Esq.
    Fla. Bar No. 1002228
    jadelgado@venable.com

14

**RICHARD F. DELLA FERA, P.A.**
500 East Broward Blvd., Suite 1710
Fort Lauderdale, FL 33394
Telephone:   (954) 848-2872
Facsimile: (954) 848-2873
Email: rdf@rdfattorney.com
            admin@rdfattorney.com

By: */s/ Richard F. Della Fera*
       RICHARD F. DELLA FERA
       Fla. Bar No. 66710

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served upon all parties registered to receive electronic notice via CM/ECF Notification on June 17, 2024.

By: /s/ *Theresa M.B. Van Vliet, Esq.*

15